COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

December 29, 2015

Stephen P. Lamb, Esquire
Paul, Weiss, Rifkind, Wharton
  & Garrison LLP
500 Delaware Avenue, Suite 200
Wilmington, DE  19801

Kevin G. Abrams, Esquire
J. Peter Shindel, Jr., Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE  19807

> Re:   *AM General Holdings LLC v. The Renco Group, Inc.*
>          C.A. No. 7639-VCN
>       *The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*
>          C.A. No. 7668-VCN
>       Date Submitted:  July 23, 2015

Dear Counsel:

These two actions are proceeding in tandem.[1]  In essence, the Renco Group,

Inc. and affiliates ("Renco") are in a dispute with MacAndrews & Forbes Holdings

Inc. and affiliates ("M&F") about their inter-related investments in Nominal

Defendants AM General Holdings LLC ("Holdco") and Ilshar Capital LLC

---

[1] Background can be gleaned from any of several earlier opinions.  *See AM Gen. Hldgs. LLC ex rel. Ilshar Capital LLC v. Renco Gp., Inc.*, 2013 WL 5863010, at *1 n.1 (Del. Ch. Oct. 31, 2013) (collecting some past opinions).  Perhaps an understanding of the complex relationships among the various parties can be obtained from one of those opinions.

*AM General Holdings LLC v. The Renco Group, Inc.*
   C.A. No. 7639-VCN
*The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*
   C.A. No. 7668-VCN
December 29, 2015
Page 2

("Ilshar").   Currently pending are two motions: M&F has moved to compel discovery; Renco seeks a preliminary injunction to require M&F to provide it with certain operating information regarding Holdco.

A. *Discovery*

The parties have worked to reduce the scope of their discovery disputes. Two issues, under the umbrella of M&F's Motion to Compel, remain.

First, M&F seeks Ilshar's statement of assets and liabilities.[2]  Renco plausibly argues that M&F's informational rights are set forth in the carefully and comprehensively negotiated Amended and Restated Limited Liability Company Agreement of Ilshar Capital LLC  (the "Ilshar Agreement").  This, however, is not only a matter of contractual informational rights.  In addition, M&F has sought discovery in the context of litigation in which Ilshar's financial condition—and the various investments made and liabilities assumed on its behalf by Renco—is fairly at issue.   For example, M&F has presented colorable claims that improper

---

[2] Ilshar is under the direct operational control of Renco's affiliate, ILR Capital LLC.

*AM General Holdings LLC v. The Renco Group, Inc.*
   C.A. No. 7639-VCN
*The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*
   C.A. No. 7668-VCN
December 29, 2015
Page 3

investments (as prohibited by the Ilshar Agreement) have been made.  In order to develop this claim, an understanding of what the investments (assets) are and what the obligations (liabilities) are has become a proper objective of discovery.  Assets and liabilities are relevant; that information is not privileged.  The contractual informational rights of the parties do not override or otherwise limit basic discovery expectations.  Renco shall provide M&F with Ilshar's statements of assets and liabilities as prepared over the preceding twelve months.

Second, M&F seeks to learn how Renco was able to post a supersedeas bond to facilitate an appeal from a significant monetary judgment awarded against it in New York.  In other words, M&F wants to make sure that Renco has not pledged (or otherwise used) the assets (broadly defined) of Ilshar to obtain the bond.  Renco has denied using Ilshar's assets in the bonding effort.  Given the lack of trust between the two sides, M&F's skepticism may be understandable, but skepticism does not automatically open the door to the financial details of a contractual counterparty.  Where Renco found the funding—as long as it was not tied to Ilshar—is neither relevant to these proceedings nor likely to lead to the discovery

*AM General Holdings LLC v. The Renco Group, Inc.*
   C.A. No. 7639-VCN
*The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*
   C.A. No. 7668-VCN
December 29, 2015
Page 4

of admissible evidence. Moreover, presumably, if Ilshar's assets were pledged in some fashion to help with the bonding process, Ilshar's statement of assets and liabilities should reflect the obligation. For these reasons, M&F's motion to compel is denied as to any external sources (*i.e.*, sources other than Ilshar) for support of the supersedeas bond. A more developed factual basis for this discovery request may justify its renewal.

B. *Preliminary Injunction*

Renco seeks "a preliminary injunction enjoining [Defendants] from depriving Renco of its informational rights under the [Holdco Agreement]."[3] More specifically, it asks the Court to "grant Renco's requested injunction and require the [Defendants] to honor Renco's unambiguous contractual rights by . . . requiring the [Defendants] to (1) permit Renco and an authorized representative to inspect

---

[3] Pl. The Renco Gp., Inc.'s Mot. for a Prelim. Inj. to Enforce its Rights Under the Holdco Agreement. The Limited Liability Company Agreement of AM General Holdings LLC (the "Holdco Agreement") appears as Exhibit A to the Affidavit of William J. Natbony in Supp. of its Appl. for a Prelim. Inj. to Enforce its Rights Under the Holdco Agreement.

*AM General Holdings LLC v. The Renco Group, Inc.*
  C.A. No. 7639-VCN
*The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*
  C.A. No. 7668-VCN
December 29, 2015
Page 5

and examine Holdco's and AM General's books of account and (2) provide Renco

with all monthly reporting relating to the AM General Business since May 2013."[4]

Renco invokes Section 10.1(a) of the Holdco Agreement, which provides in

pertinent part:

> At all times during the continuance of the Company, the Company shall maintain . . . separate books of account for the Company and AM General that shall show a true and accurate record of all costs and expenses incurred . . . all charges made, all credits made and received and all income derived in connection with the operation of the Company business . . . .  In accordance with Section 18-305 of the Delaware [Limited Liability Company] Act, such books of account . . . shall at all times be open to inspection and examination at reasonable times by each Member and its duly authorized representative for any purpose reasonably related to such Member's interest as a member of the Company.

Renco also relies upon Section 15.14 of the Holdco Agreement, which provides in

pertinent part:

> The parties hereto agree that any party by whom this Agreement is enforceable shall be entitled to specific performance in addition to any other appropriate relief or remedy.  Such party may . . . apply to a

---

[4] Renco's Appl. for a Prelim. Inj. to Enforce its Rights Under the Holdco Agreement at 3–4.  "AM General" refers to AM General LLC, which is the operating entity held by Holdco.

*AM General Holdings LLC v. The Renco Group, Inc.*
   C.A. No. 7639-VCN
*The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*
   C.A. No. 7668-VCN
December 29, 2015
Page 6

court of competent jurisdiction for . . . injunctive or such other relief as such court may deem just and proper in order to enforce this Agreement or prevent any violation hereof and, to the extent permitted by applicable law, each party waives any objection to the imposition of such relief.

In *Renco Group, Inc. v. MacAndrews AMG Holdings LLC*,[5] the Court looked to that language in concluding that the irreparable injury prong of the preliminary injunction standard was satisfied.[6] Thus, Renco understandably argues, under the law of the case doctrine,[7] that Renco's burden of showing irreparable harm has been waived or otherwise satisfied for purposes of this proceeding.

The preliminary problem is procedural. Renco has not invoked statutory rights to obtain books and records in the traditional sense.[8] Similarly, it has not used the Court's discovery rules. To an extent, the question for the Court is whether Renco's label for the relief it seeks—that of a preliminary injunction—

---

[5] 2013 WL 3369318, at *11 (Del. Ch. June 19, 2013) (the "June 2013 Opinion").

[6] *See also AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2012 WL 6681994, at *5–6 (Del. Ch. Dec. 21, 2012) (the "December 2012 Opinion") (considering the effect of a nearly identical provision in the Ilshar Agreement).

[7] *See May v. Bigmar, Inc.*, 838 A.2d 285, 288 (Del. Ch. 2003), *aff'd*, 854 A.2d 1158 (Del. 2004).

[8] *See* 6 *Del. C.* § 18-305.

*AM General Holdings LLC v. The Renco Group, Inc.*
   C.A. No. 7639-VCN
*The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*
   C.A. No. 7668-VCN
December 29, 2015
Page 7

should guide its analysis or whether the Court should look more broadly at the substance of Renco's request which would, at least as a general matter, fit more conveniently under a books and records or discovery request. Although the latter approaches would seem more efficient, the Court, somewhat reluctantly, concludes that it should address the question as framed by Renco.

The June 2013 Opinion that Renco cites did not establish that Section 15.14 by itself satisfied the element of irreparable harm.[9] An accompanying footnote clarified the provision's role in analysis as ancillary, not independently sufficient.[10] Further, after finding that two of the preliminary injunction inquiry's three prongs—probability of success on the merits and the proper balancing of equities—were absent for the relief Renco sought, that opinion declined to grant the relief contemplated in Renco's motion.[11] Instead, the Court fashioned equitable relief to address then-existing concerns in a manner not envisioned by the

---

[9] *See Renco Gp.*, 2013 WL 3369318.
[10] *Id.* at *11 n.94.
[11] *Id.* at *10–13.

*AM General Holdings LLC v. The Renco Group, Inc.*
   C.A. No. 7639-VCN
*The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*
   C.A. No. 7668-VCN
December 29, 2015
Page 8

movant but nonetheless supported by the record.[12]  There, Renco had sought orders

requiring AMG to reallocate certain distributions and cease any future distributions

to AMG pending appraisal, but the relief the Court ordered accomplished neither;

rather, the Court crafted a "limited injunction" allowing AMG to make

distributions so long as it provided Renco "a summary of its determination of the

Revalued Capital Accounts fifteen calendar days" before doing so.[13]  For all of

these reasons, it is far from clear that the June 2013 Opinion "decided" the issue of

irreparable harm for purposes of this proceeding under the law of the case

doctrine.[14]

Nor did the December 2012 Opinion issued in one of these parallel

proceedings.[15]  There, Holdco sought and received a mandatory preliminary

injunction requiring Renco to comply with certain contractual provisions that

---

[12] *Id.* at *13.
[13] *Id.* at *1, 13.
[14] *See May*, 838 A.2d at 288 n.8 ("The 'law of the case' doctrine requires that issues *already decided* by the same court should be adopted without relitigation . . . ." (emphasis added)).
[15] *See AM Gen. Hldgs.*, 2012 WL 6681994, at *4–7.

*AM General Holdings LLC v. The Renco Group, Inc.*
   C.A. No. 7639-VCN
*The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*
   C.A. No. 7668-VCN
December 29, 2015
Page 9

would resolve a dispute over the rightful ownership of $48,658,515 that Ilshar had retained.[16] This Court reasoned that particularly strong showings with respect to the elements of probability of success on the merits and balancing of the equities overcame Holdco's comparatively weak showing of irreparable harm.[17] Two aspects of Holdco's irreparable harm theory influenced the December 2012 Opinion's ultimate holding: (1) contractual waiver as reflected in a similar provision in the Ilshar Agreement and (2) the fact that Renco had deprived Holdco of the corporate governance process by bypassing an applicable contractual framework.[18] Just like the June 2013 Opinion, the December 2012 Opinion recognized that a contractual waiver provision does not necessarily satisfy the element of irreparable harm because each decision weighs it as one relevant, and sometimes significant, contributor informing whether the flexible preliminary injunction standard was met. Accordingly, neither opinion establishes that the

---

[16] *Id.* at *1–2, 7.
[17] *Id.* at *7.
[18] *Id.* at *5.

*AM General Holdings LLC v. The Renco Group, Inc.*
   C.A. No. 7639-VCN
*The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*
   C.A. No. 7668-VCN
December 29, 2015
Page 10

waiver provision conclusively satisfies the element of irreparable harm under *May v. Bigmar*. In short, the context of its application cannot be ignored.

Further, Renco has not shown that it is suffering irreparable harm due to its informational shortage. No doubt, it is inconvenient, but irreparable harm in the absence of interim injunctive relief is a necessary showing. Parties sometimes, as Renco and M&F did here, agree that contractual failures are to be deemed to impose the risk of irreparable harm. Such an understanding can be helpful when the question of irreparable harm is a close one.[19] Parties, however, cannot in advance agree to assure themselves (and thereby impair the Court's exercise of its well-established discretionary role in the context of assessing the reasonableness of interim injunctive relief) the benefit of expedited judicial review through the use of a simple contractual stipulation that a breach of that contract would constitute irreparable harm.[20]

---

[19] *See Renco Gp.*, 2013 WL 3369318, at *11 n.94.

[20] In part, this is simply a matter that allocation of scarce judicial resources is a judicial function, not a demand option for litigants. In the preliminary injunction dispute resolved in the December 2012 Opinion, there was a fundamental

*AM General Holdings LLC v. The Renco Group, Inc.*
    C.A. No. 7639-VCN
*The Renco Group, Inc. v. MacAndrews AMG Holdings LLC*
    C.A. No. 7668-VCN
December 29, 2015
Page 11

Because the irreparable harm standard has not been met, the motion for a

preliminary injunction is denied.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc:   Thad J. Bracegirdle, Esquire
       Joel Friedlander, Esquire
       Register in Chancery-K

---

breakdown—or so it was alleged—in both corporate governance and cash flow aspects of a party's investment. *AM Gen. Hldgs.*, 2012 WL 6681994, at *1–2. The Court is not suggesting that Renco's concerns are not significant; it is just noting that they do not carry the criticality of M&F's claims that were addressed earlier in these proceedings.