## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

SORRENTO THERAPEUTICS, INC., a Delaware corporation, and SCILEX PHARMACEUTICALS INC., a Delaware corporation,

Plaintiffs,

v.

ANTHONY MACK,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2021-0210-PAF

## ORDER ADDRESSING APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

WHEREAS:

A.     On March 12, 2021, plaintiffs Sorrento Therapeutics, Inc. ("Sorrento") and Scilex Pharmaceuticals, Inc. ("Scilex," and with Sorrento, "Plaintiffs") filed their original complaint in this action against defendants Anthony Mack and Virpax Pharmaceuticals, Inc. ("Virpax," and with Mack, "Defendants").

B.     Plaintiffs later filed amended complaints.  The operative complaint asserted claims against Mack for breach of an employment agreement and a restrictive covenants agreement, breach of fiduciary duty, and misappropriation of trade secrets, and against Virpax for tortious interference, aiding and abetting Mack's breaches of fiduciary duty, and misappropriation of trade secrets.

C.     On September 1, 2023, the court issued a post-trial opinion on liability (the "Liability Opinion"). The Liability Opinion reflected a mixed result for the parties. The Liability Opinion found that Mack had breached the restrictive covenants agreement and that Virpax had tortiously interfered with that agreement. The court also found that Mack had breached his fiduciary duties by diverting certain corporate opportunities to his other enterprises, including Virpax, and that he had improperly used Scilex employees, funds, and data to develop those opportunities. The court concluded that Virpax had aided and abetted Mack's breaches of fiduciary duty.

D.     Plaintiffs obtained a much more modest victory on their claims for misappropriation of trade secrets. Despite Plaintiffs' contention that Defendants misappropriated trade secret information contained in more than a thousand documents, the court found that Plaintiffs met their burden of proof as to information contained in only five of those documents.

E.     After the court issued the Liability Opinion, Plaintiffs and Virpax entered into a settlement agreement, leaving Mack as the lone defendant. On July 31, 2025, the court issued an opinion determining the appropriate remedy (the "Remedy Opinion"). The Remedy Opinion concluded that Mack was not liable for damages for breach of the restrictive covenants agreement or misappropriation of trade secrets. The court extended the duration of the restrictive covenants agreement

2

and permanently enjoined Mack from using or disclosing any of the trade secret information that he had misappropriated. The Remedy Opinion found that Plaintiffs had proved damages of $540,576 for Mack's breaches of his duty of loyalty, but because of the settlement agreement between Plaintiffs and Virpax, that amount was reduced to zero.

F. The court also determined that Mack had "engaged in intentional misconduct in clear violation of his duty of loyalty." Remedy Op. at 47. The Remedy Opinion also found Mack's conduct to be "willful and malicious" and that he had engaged in litigation misconduct, all of which warranted fee shifting. *Id.* Mindful that Plaintiffs were only partially successful on their claims, the court, in the exercise of its discretion, awarded Plaintiffs one-third of their reasonable attorneys' fees and expenses in pursuing this litigation, to be paid by Mack. *Id.* at 49.

G. Plaintiffs and Mack were unable to reach agreement on the amount of attorneys' fees to be awarded to Plaintiffs. Plaintiffs have documented a total of $16,134,946.06 in attorneys' fees and expenses, for which they seek one-third, or $5,378,315.35.[1] Mack challenges that amount as unreasonable.[2] Mack argues that

---

[1] Ma Aff. ¶ 7.

[2] Mack's Opposition Br. ¶ 6.

Plaintiffs' reasonable fees in this case are no more than $7,251,521.78, leaving Mack responsible for no more than $2,417,173.93.[3]

NOW, THEREFORE, the court having carefully considered Plaintiffs' application for attorneys' fees and expenses and Mack's opposition thereto, IT IS HEREBY ORDERED, this 2nd day of April, 2026, as follows:

1. "Delaware law dictates that, in fee shifting cases, a judge [must] determine whether the fees requested are reasonable." *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007). The court has broad discretion in making this determination. *Black v. Staffieri*, 2014 WL 814122, at *4 (Del. Feb. 27, 2014) (TABLE) (citing *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 506 (Del. 2005)). To assess a fee's reasonableness, the court considers the factors set forth in the Delaware Lawyers' Rules of Professional Conduct. *See Mahani*, 935 A.2d at 245–46. The relevant factors are as follows:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;

---

[3] Mack's Opposition Br. 15.

4

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

Del. Lawyers' R. Prof'l Conduct 1.5(a).

2.     "Determining reasonableness does not require that this Court examine individually each time entry and disbursement." *Aveta Inc. v. Bengoa*, 2010 WL 3221823, at *6 (Del. Ch. Aug. 13, 2010). "Just because the court will not review each line item individually[, however,] . . . does not mean that the party seeking [attorneys' fees] can play fast and loose . . . . [C]ounsel must make a good faith determination regarding the fees and expenses to which its clients are entitled." *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *12 (Del. Ch. Feb. 13, 2018). Delaware courts, however, generally eschew second-guessing an attorney's judgment as to whether work was necessary or appropriate. *Arbitrium (Cayman Is.) Handels AG v. Johnston*, 1998 WL 155550, at *4 (Del. Ch. Mar. 30, 1998), *aff'd*, 720 A.2d 542 (Del. 1998). Such hindsight review "is hazardous and should[,] whenever possible[,] be avoided." *Id.*; *accord Lynch v. Gonzalez*, 2020 WL 5587716, at *2 (Del. Ch. Sept. 18, 2020), *aff'd*, 253 A.3d 556 (Del. 2021). One indication of reasonableness is a party's agreement to an hourly fee arrangement that commits the client to pay fees incurred regardless of the outcome of the litigation.

*See State Wis. Inv. Bd. v. Bartlett*, 2002 WL 568417, at *6 (Del. Ch. Apr. 9, 2002) ("[A]n arm's length agreement, particularly with a sophisticated client, as in this instance, can provide an initial 'rough cut' of a commercially reasonable fee."), *aff'd*, 808 A.2d 1205 (Del. 2002) (citation modified); *Aveta*, 2010 WL 3221823, at *6 ("A further indication of reasonableness is the reality that when [the plaintiff] filed its motion to enforce and paid the expenses it now seeks to recover, [the plaintiff] did not know that it would be able to shift those expenses to [the defendant]."). This arrangement is an indication of reasonableness because the risk of having to actually pay those fees provides the fee-seeking party sufficient incentive to monitor its counsel's work and ensure that counsel does not engage in excessive or unnecessary efforts. *Id*. at *6. "When awarding expenses as a contempt sanction or for bad faith litigation tactics, this Court takes into account the remedial nature of the award." *Id.* "Such an award is designed to make whole the party who was injured by the other side's contumely." *Id.*

3.      Before addressing Mack's specific objections to the fee request, there are two general observations worth noting. First, this was not a run-of-the-mill case. It was complex, and the litigation spanned more than three years. It included claims under Delaware and California law that alleged competition with Scilex's only product in the market. The evidence and expert testimony involved, among other matters, the intricacies of the drug development industry, the specific pipeline

6

products at issue, the U.S. Food and Drug Administration approval process, and digital forensics. Seven fact witnesses and four experts testified at trial, and the parties submitted deposition transcripts from 22 witnesses. It was apparent to the court that Plaintiffs treated Defendants' conduct as an existential threat to Scilex, and they were willing to devote the resources to prove their claims. Second, the court has accounted for Plaintiffs' mixed success and their post-trial settlement with Virpax by requiring Mack to pay one-third of Plaintiffs' reasonable attorneys' fees.

4. Turning to the reasonableness of the amount sought, Mack offers several arguments in opposition to Plaintiffs' petition. First, he contends that the original Rule 88 affidavits did not include documentation sufficient to determine the amounts sought and to evaluate the reasonableness of counsel's efforts. Second, he argues that the invoices submitted on reply should be rejected outright and, even if considered, reflect "block billing" and an insufficient breakdown to be reliable. Third, Mack asserts that Plaintiffs should not recover expenses for experts whose reports were withdrawn or who did not appear at trial. Fourth, he insists that too many lawyers were involved, which resulted in duplicative and wasteful effort. Fifth, Mack claims the hourly rates of counsel were too high, partners performed a disproportionate amount of the work, and the hours expended were excessive. Sixth, he contends the fee should be reduced because it exceeds the amount recovered. And

7

seventh, Mack says he is financially incapable of paying the amount sought. The court addresses each argument in turn.

5. Court of Chancery Rule 88 does not specify the granularity of data that must be submitted to support an application for fees and expenses. Rather, the court "has discretion in determining the level of submission required." *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 995 (Del. Ch. 2012) (citing *Cohen v. Cohen*, 269 A.2d 205, 207 (Del. 1970)); *see Arbitrium*, 1998 WL 155550, at *2 (rejecting the argument that time records for all attorneys working on the case were required to assess the reasonableness of the fee). Plaintiffs' initial fee affidavits were somewhat comparable to submissions that this court sees in support of fee and expense applications in representative stockholder litigation where plaintiffs seek a fee award under the common fund or corporate benefit doctrines. Although those initial affidavits did not include invoices, Plaintiffs provided the unredacted invoices of their lead counsel (Latham & Watkins LLP ("Latham") and Morris, Nichols, Arsht & Tunnell LLP ("MNAT")) to Mack's counsel prior to submitting the affidavits. Plaintiffs subsequently submitted those invoices along with their reply brief.

6. Failure to submit invoices with the opening affidavits is not a *per se* basis for denying the fee request. This court has, on several occasions, permitted counsel to provide supplemental support for fee applications. *See, e.g.*, *Stratcap Inv., Inc. v. Mears*, 2016 WL 6199011, at *2 (Del. Ch. Oct. 21, 2016) (permitting

8

counsel to file supplemental submissions to support reasonableness of amounts sought in fee application); *Kerbs v. Bioness Inc.*, 2022 WL 3347993, at \*3 (Del. Ch. Aug. 15, 2022) (indicating the court had requested supplemental information concerning a Rule 88 submission); *In re Diamond Shamrock Corp.*, 1988 WL 94752, at \*1 (Del. Ch. Sept. 14, 1988) (noting that the court deferred action on fee application pending supplemental briefs); *see also Weddle v. BP Amoco Chem. Co.*, 2020 WL 5049233, at \*2 (Del. Super. Aug. 26, 2020) (noting that the court had requested supplemental submissions to allow for consideration of the reasonableness of the fee request under Rule 1.5 of the Delaware Lawyers' Rules of Professional Conduct). Mack's objection to the fee request on this basis is rejected.

7. Mack next contends that the invoices do not allow for a meaningful assessment of reasonableness because Latham and MNAT "utilized 'block billing,' in which the time entries for each attorney on a day-to-day basis contain a single list of tasks performed and a total number of hours for the day." Opp. ¶ 16. Mack argues that this warrants denial of the fee request in its entirety. The court is not persuaded that recording time in this manner warrants denial of the fee request. *See*, *e.g.*, *May v. Bigmar, Inc.*, 838 A.2d 285, 290 (Del. Ch. 2003) (rejecting the argument that block billing warranted disallowance of a claim for fees), *aff'd*, 854 A.2d 1158 (Del. 2004).

8. Block billing is not inherently objectionable. *See In re TransPerfect Glob., Inc.*, 2021 WL 1711797, at \*31 (Del. Ch. Apr. 30, 2021) ("Respondents cite

9

no case where a Delaware court has ruled that block billing is impermissible as a matter of law."), *aff'd sub nom. TransPerfect Glob., Inc. v. Pincus*, 278 A.3d 630 (Del. 2022); *Concord Steel, Inc. v. Wilm. Steel Processing Co., Inc.*, 2010 WL 571934, at *3 n.22 (Del. Ch. Feb. 5, 2010) (noting the absence of "any Delaware case that finds block-billing objectionable *per se*"), *aff'd*, 7 A.3d 486 (Del. 2010). Mack does not identify any specific time entries he finds objectionable. Instead, he broadly objects to the use of "block billing" and asserts that it "makes it difficult to evaluate the reasonableness of the amount of time spent on each individual task." Opp. ¶ 16. But this is not a situation where counsel was required to allocate time entries between compensable and non-compensable tasks. *See Bigmar*, 838 A.2d at 290 (rejecting argument that fees should be denied due to "block billing" because it was "possible to make a good faith estimate[] of proper allocation" between work performed on compensable and non-compensable claims from the time records provided to the court); *see also Renasant Bank v. Northpointe Bank*, 2019 WL 5863898, at *1 (D. Colo. Nov. 8, 2019) (observing that "block billing" presents a problem "when some of the tasks in a billing entry are compensable and others are not"). Rather, the court awarded Plaintiffs one-third of all of their reasonable attorneys' fees and expenses. The relevant inquiry "is whether the use of 'block billing' 'make[s] it more difficult for a court to assess the reasonableness of the hours claimed.'" *TransPerfect*, 2021 WL 1711797, at *31 (quoting *Immedient Corp. v.*

10

*HealthTrio, Inc.*, 2007 WL 656901, at *4 (Del. Super. Mar. 5, 2007)). In any event, the court has reviewed a large number of the time entries submitted by counsel (all of which are unredacted) and is satisfied that the level of detail is sufficient to assess the reasonableness of the time and effort expended and the amounts billed to Plaintiffs.

9. Mack argues that it is unreasonable to award fees associated with experts who either did not appear at trial or whose reports were withdrawn. Opp. ¶¶ 21–22. Specifically, Mack urges the court to eliminate entirely: (a) $373,899 billed by Cornerstone Research in support of Paul Gompers, an expert who was not relied upon at trial; and (b) $834,360.68 billed by Cornerstone Research and Eleven Canterbury in support of Anita Gupta, an expert not presented at trial. Mack also asks the court to further reduce any fees associated with Cornerstone Research's support for Plaintiffs' damages expert, Darius Lakdawalla, because the court "reject[ed] the majority of Dr. Lakdawalla's opinions." *Id.* ¶ 22.

10. The court does not find these expert fees unreasonable in the context of this case. Mack cites no authority supporting the proposition that expert expenses are *per se* unreasonable if the expert is not ultimately called to testify at trial. *See* Opp. ¶ 22. Plaintiffs, on the other hand, have cited contrary authority from California. *See City of Claremont v. Golden State Water Co.*, 2017 Cal. Super. LEXIS 8528, at *23 (Cal. Super. Mar. 8, 2017) ("The City is incorrect in asserting

11

that Golden State cannot obtain fees it paid to expert witnesses merely because Golden State did not call them at trial. Golden State is entitled to retain experts to discover the weaknesses as well as the strengths of its client's position."); *Knox v. Bluffs Homeowners Cmty. Ass'n*, 2018 Cal. Super. LEXIS 26008, at *22 (Cal. Super. Aug. 29, 2018) ("[T]he court may award reasonable fees for experts who aid in preparation for trial even if they did not actually testify").[4] There can be many reasons why counsel chose not to present an expert at trial. For example, as the case progressed and developed, Plaintiffs may have determined that, on balance, the expert was no longer needed. That does not mean that the costs associated with retaining and supporting the expert were unreasonable at the time those fees were incurred, or that the expert's services were not helpful in the development of the case and legal strategies. *See Lynch*, 2020 WL 5587716, at *2 ("A party's expenses are reasonable if they were actually paid or incurred, were thought prudent and appropriate in the good faith professional judgment of competent counsel, and were charged at rates, or on a basis, charged to others for the same or comparable services under comparable circumstances." (citation modified)). The court concludes that these expert fees and expenses were reasonable when incurred.

---

[4] The Remedy Opinion awarded fees in part under the California Uniform Trade Secrets Act. *See* Remedy Op. at 52.

12

11. Mack next insists that the fees were unreasonable because too many lawyers were involved, which likely resulted in duplicative and wasteful effort. Mack observes that: (a) 74 people from Latham and MNAT billed time to this matter over the course of the litigation, (b) several Latham timekeepers billed more than 100 hours, and others more than 150 hours, during the month of trial; and (c) 11 timekeepers billed between 10 and 18 hours per day during the three-day trial. Opp. ¶¶ 17–18. This does not strike the court as unreasonable in the context of this case. As Plaintiffs point out on reply, at least 38 of the 58 Latham timekeepers who worked on this case billed under 15 hours over the life of the matter, and 32 of them billed fewer than five hours. *See* Second Walch Aff. ¶ 7; *see also id.* ("In many instances, my partners and I sought to engage additional timekeepers with lower billing rates to efficiently assist with filings, research, and other ministerial work."). The staffing and hours expended in the leadup to and through trial are not unreasonable. *See TransPerfect*, 2021 WL 1711797, at *33 ("[Objector] provides no legal support for the proposition that billing more than ten hours in a day is improper or unreasonable."). As the court noted in *TransPerfect*: "[W]orking more than ten hours in a day is part of life when practicing in this court, particularly in expedited matters." *Id*. That is also true for trials and the immediate runup to trial. This court had a front-row seat at trial and observed the exemplary work of counsel on both sides of the "v.". As the court noted at the conclusion of trial:

13

> The trial over the last three days was, from my vantage point, pretty seamless. . . . Again, to the trial teams, I know that there is a lot of work that goes on behind the first two rows of counsel table in these trials. It's a lot of work in the trenches over weeks and months, and particularly probably over the last couple of weeks, getting ready for trial. Again, I appreciate it. And, again, your professionalism and civility are a credit to the lawyers on both sides, so thank you.[5]

The court does not view the time and effort that Plaintiffs' counsel expended at trial as unreasonable. This objection is overruled.

12. Mack next argues that the hourly rates of counsel were too high, partners performed a disproportionate amount of the work, and the hours expended were excessive. This again reflects second-guessing on strategy, something that the court is disinclined to do where the client has agreed to pay the fees. *Deane v. Maginn*, 2022 WL 16825351, at \*4 (Del. Ch. Nov. 7, 2022) ("[A client's] agreement to pay counsel's fees on a non-contingent basis provides an initial 'rough cut' of a commercially reasonable fee." (citation modified)); *Lynch*, 2020 WL 5587716, at \*2. Plaintiffs agreed to pay their counsel at their normal rates without any expectation that they would be recovered against Defendants. Plaintiffs "thus had sufficient incentive to monitor [their] counsel's work and ensure that counsel did not engage in excessive or unnecessary efforts." *Aveta*, 2010 WL 3221823, at \*6; *see Arbitrium*, 1998 WL 155550, at \*2 (concluding that fees were reasonable where the

---

[5] Trial Tr. 917:11–12, 917:19–918:2.

14

moving party agreed to pay the fees at the hourly rates charged on a non-contingent basis regardless of the outcome and actually paid those fees). Mack generally complains that some Latham partners billed in excess of $1,000 per hour, but he does not offer any persuasive argument that those rates are unreasonable. *See Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2021 WL 5174088, at *5 (Del. Ch. Nov. 8, 2021) (finding partner billing rate of $1,645 per hour to be reasonable giving the complexity of the work performed); *TransPerfect*, 2021 WL 1711797, at *24 (finding partner rates ranging from $1,225 to $1,775 and associate rates of $695 to $1,120 per hour to be reasonable). Mack also points to a few Latham invoices (the months before and during trial and the month of post-trial briefing) where partners billed a majority of the time spent on the matter. Opp. ¶ 19. In the context of this case, the allocation of work and time expended was reasonable, and the court is not inclined to second-guess it. *See Aveta*, 2010 WL 3221823, at *8 (noting that where staffing appears appropriate, it need not be "second-guessed"). This objection is overruled.

13. Mack argues that the fees should be further reduced because they "exceed the amount actually recovered." Opp. ¶ 20. For this proposition, Mack relies on two decisions. In *Wayman Fire Protection, Inc. v. Premium Fire & Security, LLC*, 2014 WL 2918671 (Del. Ch. June 27, 2014), the court recognized that attorneys' fees and expenses would probably constitute the majority of the

15

monetary relief that the plaintiff obtained in the litigation, but reduced them primarily because they were largely attributable to the plaintiff pursuing a litigation strategy investigating and ultimately bringing a large number of claims, including some that proved to be without merit. *Id*. at *2. In *Brace Industrial Contracting, Inc. v. Peterson Enterprises, Inc.*, 2019 WL 177500 (Del. Ch. Jan. 11, 2019) (ORDER), the court reduced the overall fee request primarily because the plaintiffs sought fees for claims that were not covered under the applicable indemnification agreement. *Id*. at *2.[6] Those cases are not analogous and do not indicate that Plaintiffs' fees here were unreasonable. Neither involved a breach of the duty of loyalty or findings of intentional, willful, or malicious misconduct.

14. By contrast, the fees awarded in this case are part of the actual damages for Mack's breaches of his duty of loyalty and other misconduct. As explained in the Remedy Opinion:

> [Mack] engaged in this intentional misconduct in clear violation of his duty of loyalty. Mack took affirmative steps to divert and develop Epoladerm, a competitive product to ZTlido. He took repeated actions to actively conceal these ventures from Scilex. This caused commercial harm to Scilex. Mack's conduct was willful and malicious. Once Mack's conduct was revealed and litigation was commenced, he deleted hundreds of relevant documents and denied having done so, even suggesting that his own children might be to blame. At trial, Mack

---

[6] Mack cites an earlier order in *Brace Industrial* that was later superseded by the January 11, 2019, final order. *See* Mack's Opposition Br. ¶ 20. But the substance of the two orders did not change. *Compare Brace Indus. Contr., Inc. v. Peterson Enters., Inc.*, 2018 WL 6531729, at *2 (Del. Ch. Dec. 12, 2018) (ORDER), *with Brace Indus.*, 2019 WL 177500.

16

continued to obfuscate and provided self-serving testimony that strained credulity. Mack's litigation misconduct made this case more difficult and more expensive for the Plaintiffs.[7]

15. "Fee shifting is warranted to compensate [Plaintiffs] for the excessive additional expense incurred due to [Mack's] conduct, to deter similar abusive conduct in the future, and to protect the integrity of the judicial process." *Stone & Paper Invs., LLC v. Blanch*, 2023 WL 2809142, at *7 (Del. Ch. Apr. 6, 2023) (citing *Dover Hist. Soc., Inc. v. City of Dover Plan. Comm'n*, 902 A.3d 1084, 1093 (Del. 2006)).

16. Mack next asks this court to consider that he is an individual who will be significantly affected financially if he is required to pay these fees. Mack submitted an affidavit stating that, although he is currently employed as the President and Chief Executive Officer of Pathways Neuro Pharma Inc., his compensation "is fully deferred." Mack Aff. ¶ 4. He also avers that the vast majority of his assets are held jointly with his spouse, that he has *de minimis* liquid assets, and "do[es] not have the ability to satisfy a large monetary award to the Plaintiffs in this action." *Id.* ¶¶ 5, 8–9. The affidavit is otherwise unsupported. Mack's affidavit makes no mention of the $12 million that he received in the sale of Scilex to Sorrento or the other amounts that he was paid by Scilex and Sorrento after the transaction. It is

---

[7] Remedy Op. at 47–48 (footnotes omitted).

17

also worth noting that Mack's affidavit makes no mention of his earlier representations to the court that Virpax must indemnify him for any damages awarded against him. *See* Dkt. 278 Tr. at 61:2–12; Dkt. 263 at 10. In any event, as explained herein and as is apparent from the findings in the Liability Opinion and the Remedy Opinion, Mack's predicament is of his own making. Having considered Mack's arguments and his affidavit averring an inability to pay, the lack of any other documentary support, and the factual and legal basis for imposing the fee award, the court finds no basis to reduce the fee award on these grounds.

17. Finally, the court addresses the remaining factors for consideration. This litigation spanned four years and was complicated by Mack's litigation conduct. This factor weighs in favor of the reasonableness of the requested fees. The issues in this case were complex and difficult to litigate, in part due to Mack's conduct over the history of the case. The multiplicity of the claims added some complexity, requiring skill and perseverance by Plaintiffs' counsel. This factor weighs in favor of the reasonableness of the requested fees.

18. There is no evidence that acceptance of this case would preclude other employment by Plaintiffs' lawyers. Thus, this factor does not support or undermine the reasonableness of the amount of the fee request.

19. This was not an expedited case, so there were no significant time limitations imposed by the client or the circumstances. Thus, this factor is neutral

in determining the reasonableness of the fees. The relationship between Plaintiffs and counsel was extensive, given the length of this case. Additionally, Plaintiffs' counsel are all from well-regarded law firms. The fee here is fixed and not contingent, which counsels in favor of awarding fees at Plaintiffs' lawyers' typical hourly rates.

20. Considering all of the relevant factors, this court, in the exercise of its discretion, finds that the attorneys' fees and expenses incurred by Plaintiffs in this action were reasonable. Accordingly, Plaintiffs are awarded one-third of their fees and expenses, which amounts to $5,378,315.35 to be paid by Mack.

*/s/ Paul A. Fioravanti, Jr.*
Vice Chancellor

19