# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

AM GENERAL HOLDINGS LLC,
directly and derivatively on behalf of
ILSHAR CAPITAL LLC,

        Plaintiff,

    v.

THE RENCO GROUP, INC., IRA L.
RENNERT, and ILR CAPITAL, LLC,

        Defendants,

    and

ILSHAR CAPITAL, LLC,

        Nominal Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**C.A. No. 7639-VCS**

THE RENCO GROUP, INC.,

        Plaintiff,

    v.

MacANDREWS AMG HOLDINGS LLC,
MacANDREWS & FORBES HOLDINGS
INC., RONALD O. PERELMAN,

        Defendants,

    and

AM GENERAL HOLDINGS LLC,

        Nominal Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**C.A. No. 7668-VCS**

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

WHEREAS, this matter has been pending for almost seven years and has generated numerous written opinions where the complex contractual arrangement that binds the parties along with the various disputes that are the subject of this litigation have been thoroughly discussed.[1]  There is no need to rehash those matters here.

WHEREAS, the parties have presented four motions for summary judgment (the "Motions") for decision in advance of a trial scheduled to begin on July 22, 2019:

1.      The Renco Group Inc.'s ("Renco") Motion for Partial Summary Judgment on Count I (Breach of Contract) and Count VIII (Declaratory Judgment) of its Second Amended Complaint (the "RSAC") against MacAndrews AMG Holdings LLC ("MacAndrews AMG") for improperly causing AM General LLC ("AM General") to charge its subsidiary, General Engine Products LLC ("GEP"), certain royalty and management fees (the "Royalty and Management Fee Claims") (D.I. 592)[2];

---

[1]*See, e.g.*, *AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2017 WL 2167193 (Del. Ch. May 17, 2017); *AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2016 WL 4440476 (Del. Ch. Aug. 22, 2016);  *AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2015 WL 3465956 (Del. Ch. May 29, 2015); *AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2015 WL 1726418 (Del Ch. Apr. 9, 2015); *Renco Gp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2015 WL 394011 (Del. Ch. Jan. 29, 2015); *AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2014 WL 6734250 (Del. Ch. Nov. 28, 2014); *AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2013 WL 5863010 (Del. Ch. Oct. 31, 2013); *Renco Gp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2013 WL 3369318 (Del. Ch. June 25, 2013); *AM Gen. Hldgs. LLC v. Renco Gp. Inc.*, 2013 WL 1668627 (Del. Ch. Apr. 18, 2013); *AM Gen. Hldgs. LLC v. Renco Gp., Inc.*, 2012 WL 6681994 (Del. Ch. Dec. 21, 2012).

[2] Unless otherwise indicated, citations to D.I. numbers refer to the docket in C.A. No. 7639-VCS.  Citations to depositions are in the form "[Last Name] Dep. [Page no.]."

2.	Renco's Motion for Partial Summary Judgment on Count I and Count VIII of the RSAC against MacAndrews AMG for misallocating GEP's engineering, research and development ("ER&D") expenses to Renco's capital account (the "Engineering, Research and Development Claims") (D.I. 593);

3.	Renco's Motion for Summary Judgment on Count III (Direct and Derivative Claims for Breach of Limited Liability Company Agreement) of AM General Holdings LLC's ("Holdco") Second Amended Complaint (the "HSAC") with respect to the requested removal of ILR Capital LLC ("ILR") as the managing member of Ilshar Capital LLC ("Ilshar") (the "Ilshar—Breach of Contract Claims") (D.I. 601); and

4.	MacAndrews AMG's Motion for Partial Summary Judgment on Count I, Count II (Breach of Implied Covenant of Good Faith and Fair Dealing) and Count VIII of the RSAC. (D.I. 594) with respect to claims related to Renco's alleged misappropriation of MacAndrews AMG's distributions (the "Revalued Capital Account Claims").

WHEREAS, I will address the Motions in the order presented at oral argument.

WHEREAS, "[t]here is no 'right' to a summary judgment."[3]  Summary judgment is appropriate only when, upon an examination of the record, the Court finds "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[4]  "Summary judgment may not be granted when the record indicates a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances."[5]

---

[3] *Texlon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002).

[4] Ct. Ch. R. 56(c).

[5] *Guy v. Judicial Nominating Comm'n*, 659 A.2d 777, 780 (Del. Super. Ct. 1995).  *See also Alexander Indus., Inc. v. Hill*, 211 A.2d 917, 918–19 (Del. 1965); *Ebersole v. Lowengrub*,

**NOW**, **THEREFORE**, this 10th day of April, 2019, it appears to the Court that:

**A. The Revalued Capital Account Claims**

1.     The parties dispute the construction of Sections 8.3(a) and 8.3(b) of the Holdco Agreement.   Having determined that the parties presented reasonable competing constructions of these provisions, I previously denied summary judgment so that the parties could present "extrinsic evidence that hopefully [provides] insight regarding the parties' intent."[6]

2.     The parties have proffered competing extrinsic evidence in support of their interpretations of Sections 8.3(a) and (b).  MacAndrews AMG contends that the drafting history of the Holdco Agreement indisputably demonstrates that Section 8.3(a) applies before Renco may elect to receive a distribution under 8.3(b). Renco claims that even after the changes to the applicable provisions in the drafting sequence, counsel for both parties agreed that Renco's election right under 8.3(b) could be exercised before the allocations in 8.3(a).

---

180 A.2d 467, 470 (Del. 1962); *Phillips v. Schifino*, 2009 WL 5174328, at *1 (Del. Ch. Dec. 18, 2009); *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 1998 WL 731660, at *3 (Del. Ch. Oct. 9, 1998).

[6] *AM Gen. Hldgs. LLC*, 2017 WL 2167193, at *6.  *See also Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232–33 (Del. 1997) ("[W]hen there is uncertainty in the meaning and application of contract language, the reviewing court must consider the evidence offered in order to arrive at a proper interpretation of contractual terms.").

4

3.     Genuine issues of fact remain regarding the proper construction of these provisions, including:

a. A draft of Section 8.3(b) dated June 29, 2004 permitted Renco to take distributions "in lieu of" a reallocation under Section 8.3(a).[7]

b. In the July 9, 2004 draft of the Holdco Agreement, the definition of Revalued Capital Account and the calculation of hypothetical gains and losses appeared in Section 4.4, which referenced "Sections 8.1, 8.2, **8.3(d)**, and 8.4."[8]

c. In the July 29, 2004 draft of the Holdco Agreement, the "in lieu of" language from previous versions of Section 8.3(b) was removed and Section 4.4 was expanded to include "Sections 8.1, 8.2, **8.3**, and 8.4."[9]

d. Jeff Samuels, a tax attorney involved in the transaction, testified that "The 'in lieu of' language became inappropriate . . . at the point where revalued capital accounts came into play. Prior to the use of the revalued capital account . . . an allocation to Renco of loss beyond what should have been allocated to them or an allocation of income away from them would have had economic consequences. . . . Once revalued capital accounts are introduced into the mix, the test that is being done [is] done on a hypothetical basis . . . in order to determine whether a threshold has been met so as to be able to demonstrate to ERISA regulators that Renco does not and cannot have 80 percent or more of the capital of the combined company. No economic harm in that circumstance has been done to Renco."[10]

e. In May 2004, Renco proposed, and MacAndrews agreed, that "Renco has the option, in its sole discretion, to take any distribution to which it is entitled to

---

[7] Transmittal Aff. of Meghan M. Dougherty in Supp. of MacAndrews AMG's Mot. for Partial Summ. J. (D.I. 595), Ex. 19 at RENCO-00057249. A version dated June 22, 2004 had similar language. *See id.* Ex. 18 at RENCO-00057103.

[8] *Id.* Ex. 20 at RENCO-00057424 (emphasis supplied).

[9] *Id.* Ex. 21 at RENCO-00086514 and RENCO-00086497 (emphasis supplied).

[10] Samuels Dep. 95–96.

receive and which it determines will not cause a deemed sale or other adverse tax consequence prior to any special allocation of losses."[11]

f. The June 2, 2004 draft of the Holdco Agreement provides in Section 8.3(b) that "Renco may elect" to take a distribution to reduce or eliminate the excess of the Renco capital account over the 80% cap. The final version of 8.3(b) provides for the same right "[a]t the election of Renco."

g. Barnet Phillips, MacAndrews and Forbes's ("M&F") tax counsel, testified that for "book tax capital accounts, [] Renco had a contractual right to take a distribution to solve any imbalance."[12] He was not aware of any conversations about changes to the revalued capital accounts definition or the removal of the "in lieu of" language from Section 8.3(b).[13]

h. David Miller, Renco's lead tax counsel, recalled "that the meaning never changed, that Renco was always able to receive distributions to avoid the application of 8.3(a)," and that no discussion ever occurred regarding Renco's limited ability to receive distributions.[14]

4. Drafting history may well carry the day in proving the parties' intent.[15]

But the Court may not weigh evidence or resolve disputes arising from the evidence until it hears *all* evidence, including live witness testimony, that may be in conflict.[16]

---

[11] Transmittal Aff. of J. Peter Shindel, Jr. in Supp. of Renco's Opp'n to Mot. for Partial Summ. J. ("Shindel Account Aff.") (D.I. 621), Exs. R, S.

[12] Phillips Dep. 46.

[13] *Id*. 54–56.

[14] Miller Dep. 149. *See also id*. 52:9–25; 57:12–59:16; 160:10–162:15.

[15] *See Zayo Gp., LLC v. Latisys Hldgs., LLC*, 2018 WL 6177174, at *12 (Del. Ch. Nov. 26, 2018) (finding, in a post-trial decision, that drafting history of agreement was the most persuasive evidence of parties' intent and construing remaining evidence in accordance with the language the parties ultimately agreed to).

[16] *See Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1149 (Del. 2002). *See also Cont'l Oil Co. v. Pauley Petr., Inc.*, 251 A.2d 824, 826 (Del. 1969) ("[T]he function of a judge in passing on a motion for summary judgment is not to weigh evidence and accept that which seems to him to have the greater weight.").

When issues presented on a motion for summary judgment require the Court to make a credibility determination or "weigh the evidence to a greater degree than to determine that it is hopelessly inadequate ultimately to sustain the substantive burden," summary judgment should be denied.[17] MacAndrews AMG asks the Court to weigh conflicting evidence of the parties' negotiations and determine the credibility of counsel involved in the transaction. That is an exercise I cannot undertake at this stage of litigation. Accordingly, MacAndrews AMG's Motion as to Counts I and VIII related to the Revalued Capital Account Claims is **DENIED**.

## B. The Management and Royalty Fee Claims

5. The parties dispute the construction of Sections 1.1(v), 6.4(c) and 6.4(s) of the Holdco Agreement. Section 1.1(v) defines "AM General Major Decision" to include the "sale, transfer, distribution or other disposition of any of the assets or Capital Stock of GEP."[18] Section 6.4(c), in turn, requires mutual consent for an AM General Major Decision.[19] Section 6.4(s) requires mutual consent for "the hiring or contracting with of any Person who is an affiliate of [MacAndrews AMG or M&F] to perform any management, consulting or similar services for, or payment of a management or similar fee by, the Company, AM General or any of its

---

[17] *Cereberus*, 794 A.2d at 1150.

[18] Transmittal Aff. of J. Peter Shindel, Jr. in Supp. of Renco's Reply Br. in Supp. of Mot. for Summ. J. on Ilshar—Breach of Contract Claims ("Shindel Ilshar Aff.") (D.I. 601), Ex. A ("Holdco Agreement") 6.

[19] *Id*. at 43.

subsidiaries to any such Person."[20]  Renco contends that the challenged management and royalty fees are a "transfer" of "assets" prohibited by Sections 6.4(c) and 6.4(s). MacAndrews AMG argues that neither provision prohibits the charges and they are, therefore, not subject to mutual consent.

6.      The Court previously decided that the contested provisions are ambiguous, specifically the terms "AM General Major Decision," "asset" and "affiliate."[21]  The Court's determination of ambiguity is law of the case.[22]

7.      After reviewing the extrinsic evidence, I have concluded that significant factual disputes remain, including:

---

[20] *Id*. at 46.

[21] *Renco Gp., Inc.*, 2015 WL 394011, at \*5.  Vice Chancellor Noble determined that neither party's interpretation was "patently unreasonable," which "reflect[ed] ambiguity in the Holdco Agreement."  *Id.*  Renco argues that this "non-definitive language in a motion to dismiss opinion" does not prevent the Court from revisiting the ambiguity question and giving "transfer," "asset" and "affiliate" their plain meaning.  Renco's Reply Br. in Further Supp. of its Mot. for Summ. J. on Royalty and Management Fee Claims (D.I. 630) 3. I disagree.  The Court determined explicitly that the terms in dispute were ambiguous. Once the Court has identified ambiguity, whether on a motion to dismiss or summary judgment, it should turn to extrinsic evidence to resolve the competing interpretations. *See, e.g.*, *Monier, Inc. v. Boral Lifetile, Inc.*, 2008 WL 2168334, at \*5 (Del. Ch. May 13, 2008) (observing that on a motion to dismiss a claim based on a contract, the court's first function is to determine whether the contract is ambiguous as a matter of law; if ambiguous, the court must deny the motion and allow the parties to develop and present extrinsic evidence); *Izquierdo v. Sills*, 2004 WL 2290811, at \*9 (Del. Ch. June 29, 2004) (denying summary judgment after considering extrinsic evidence supporting differing interpretations).

[22] *May v. Bigmar, Inc.*, 838 A.2d 285, 288 n.8 (Del. Ch. Dec. 10, 2003) ("The 'law of the case' doctrine requires that issues already decided by the same court should be adopted without relitigation, and once a matter has been addressed in a procedurally appropriate way by a court . . . [it] will not be disturbed by that court unless compelling reason to do so appears." (internal quotations omitted)).  I decline to revisit the Court's determination regarding ambiguity as Renco has provided no basis to do so.

a. One week before Renco proposed Subsection v in the Holdco Agreement, MacAndrews AMG's counsel circulated an "issues list." Under the header "Definition of AM General Major Decision," the list identified outstanding negotiation points including the "[e]xtent of Renco veto over changes in the manner of conducting the GEP business, thereby limiting M&F's flexibility in managing that business (as Renco proposes)."[23]

b. Adam Ingber, M&F's Chief Tax Officer, testified that the purpose of Subsection v is tax-related, "intended to preserve a substantial item of income for Renco," and "to prevent the major transformation of the GEP business."[24]

c. Edward Taibi, MacAndrews AMG's in-house counsel, testified that Subsection v was intended to preclude any unilateral decision by MacAndrews AMG to sell or effectively dissolve GEP.[25]

d. Ira Rennert testified, "we put in so many restrictions to protect ourselves [so] that they wouldn't . . . manipulate the cost and expenses to the detriment of our income . . . [because] we were very concerned about that."[26]

e. Brian Harshberger, AM General's treasurer, testified: "Q. It's the transfer of an asset on a balance sheet? A. Better stated, yes. Q. And it's a transfer of profit on the P&L? A. Correct . . . Q. By the amount of the royalty and management fee? A. Correct."[27]

f. Paul Cafiero, AM General's former Chief Financial Officer, testified that, as a result of the fees, "money was being moved from GEP to AM General."[28]

---

[23] Transmittal Aff. of J. Peter Shindel, Jr. in Supp. of Renco's Reply Br. in Supp. of Mot. for Summ. J. on Royalty and Management Fees (D.I. 634), Ex. I at RENCO-00056961.

[24] Ingber Dep. 227–30.

[25] Taibi Dep. 8–16, 22–26.

[26] Rennert Dep. 57–58.

[27] Harshberger Dep. 56.

[28] Cafiero Dep. 140.

g. John Salomon, Renco's accounting expert, determined that the transfers recorded on GEP's books were transfers of assets.[29] He testified that "during the time the accrual was in place" the royalty "wasn't being paid. I mean, 'paid' to me means cash changing hands."[30]

h. Louis Dudney, MacAndrews AMG's accounting expert, testified that GEP's liability for the fees was "a present obligation to transfer assets."[31] He also testified that GEP's recognition of a liability for the fees "had an expectation of cash consequences associated with it because there was an expectation . . . that they would be paying – that's why they booked a payable on their books . . . ."[32]

i. Taibi testified that Section 6.4(s) was "a protection for Renco to prohibit . . . MacAndrews and the managing member of AM General Holdings from imposing its own costs, its own employee costs, for instance on AM General."[33]

j. Michael Ryan, Renco's General Counsel, testified: "Q. Is it your recollection that [Section 6.4(s)], . . . was done specifically with an eye towards a management fee between GEP and AM General? A. I don't recollect. And I do recollect the more specific, preventing payments up to M&F.[34]

8. As noted, I cannot weigh conflicting extrinsic evidence in support of each party's interpretation of the agreement or evaluate the credibility of witnesses on summary judgment.

---

[29] Transmittal Aff. of Meghan M. Dougherty in Supp. of MacAndrews AMG's Opp'n to Mot. for Summ. J. on Royalty and Management Fee Claims (D.I. 610), Ex. 19 at 13–15.

[30] Salomon Dep. (Day 2) 65.

[31] Dudney Dep. 62.

[32] *Id*. 67.

[33] Taibi Dep. 59–62.

[34] Ryan Dep. 221.

9.     MacAndrews AMG argues that it is entitled to summary judgment on the royalty and management fees under the Holdco Agreement's exculpation clause. Section 12.2 states that MacAndrews AMG will not be liable for "any act or omission performed or omitted by [it] in good faith and in the manner reasonably believed to be within the scope of authority."[35] Renco maintains that the application of the exculpation clause turns on disputed facts and has provided evidence that MacAndrews AMG would not be entitled to avail itself of the safe harbor. For example, MacAndrews AMG contends that it commissioned third-party firms to evaluate an appropriate management fee and royalty, but Renco argues that MacAndrews AMG started charging the excessive royalty on its own and later asked the appraiser to conjure up a justification to support it.[36] This is a material factual dispute with regard to "good faith" that prohibits summary judgment.

10.     Accordingly, the Motions as to Counts I and VIII related to the Royalty and Management Fee Claims are **DENIED**.

11.     MacAndrews AMG has moved to dismiss Count II of the RSAC, where it is alleged that MacAndrews AMG's imposition of royalty and management fees breached the implied covenant of good faith and fair dealing. Specifically, Renco argues that MacAndrews AMG's alleged misconduct defeats Renco's "clear

---

[35] Holdco Agreement at 74.

[36] Shindel Account Aff., Exs. CC, X.

contractual expectation" that the managing member would not reduce GEP's profits to decrease Renco's preferred allocation.[37]

12. Renco's arguments in support of its Royalty and Management Fee Claims belie its argument that the implied covenant has any role here. The implied covenant addresses "developments or contractual gaps that the asserting party pleads neither party anticipated."[38] It applies only "when the contract is truly silent with respect to the matter at hand, and only when the court finds that the expectations of the parties were so fundamental that it is clear that they did not feel a need to negotiate about them."[39] When construed in Renco's favor, sections 6.4(c) and 6.4(s) prohibit MacAndrews AMG from charging royalty and management fees. When viewed in favor of MacAndrews AMG, the provisions permit the charges. It cannot be said, then, that the Holdco Agreement is silent as to the imposition of the fees. The contract occupies the space and there is no gap in the Holdco Agreement for the implied covenant to fill. Accordingly, MacAndrews AMG's motion for summary judgment as to Count II is **GRANTED**.

---

[37] Renco's Opp'n to MacAndrews AMG's Mot. for Partial Summ. J. (D.I. 611) 3.

[38] *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010).

[39] *Allied Capital Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1032–33 (Del. Ch. Nov. 22, 2006).

## C. The Engineering, Research and Development Claims

13.   The parties dispute the treatment of GEP'S ER&D costs in calculating profits and losses for AM General.  Under Section 8.1 of the Holdco Agreement, Renco's capital account is allocated 100% of "GEP Profits and Losses," which includes "all Profits and Losses in respect of the GEP Business, calculated in accordance with the methodology set forth on Schedule B."[40]  "GEP Business" includes "(i) the engine manufacturing and other related activities conducted at the facility located at 2000 Watkins Glenn Drive, Franklin, Ohio 45005; and (ii) the manufacture, assembly, sale or distribution . . . of the Diesel Engine."[41]

14.   The parties agree that "GEP Business" does not encompass the entirety of GEP's business operations.  Renco reads the Holdco Agreement to exclude from "GEP Business" the deduction of ER&D expenses, which allegedly relate only to activities conducted at the Michigan facility and are not costs of "manufacture, assembly, sale or distribution."  MacAndrews AMG contends that the Holdco Agreement expressly permits the deduction of certain ER&D costs.  It also maintains that Renco should be judicially estopped from asserting that no ER&D allocation is

---

[40] Holdco Agreement at 51.

[41] *Id*. at 13.

permitted because Renco previously acknowledged that MacAndrews AMG is entitled to allocate ER&D related to the 6.5L Diesel Engine. [42]

15.    At the very least, Renco's about-face reflects ambiguity in the contractual provisions related to the ER&D claims.  Renco initially (and repeatedly) argued that the provisions permit MacAndrews AMG to deduct ER&D expenses related to the 6.5L Diesel Engine.  Now, Renco urges the Court to reach the opposite construction without any persuasive explanation or justification for the change in position.  Since Renco has read the contract to mean two different things, its argument that these provisions are not susceptible to two reasonable interpretations rings hollow.

16.    Where contract provisions are ambiguous, summary judgment is inappropriate if "the moving party has failed to offer uncontested evidence as to the proper interpretation." [43]    Renco has not provided evidence suggesting its "construction is the *only* reasonable interpretation."[44]  Moreover, Renco's failure to object to the inclusion of some ER&D expenses at any point prior to the filing of this litigation is "course of performance" evidence suggesting there is at least a

---

[42] *See, e.g.*, RSAC ¶¶ 115, 162(f); Pl.'s Br. in Opp'n to Mot. to Dismiss the Second Am. Compl. (C.A. No. 7668-VCS, D.I. 180) 28, 29; Renco's Opp'n to MacAndrews AMG's Mot. for Partial Summ. J. (C.A. No. 7668-VCS, D.I. 381) 16.

[43] *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 784 (Del. 2012).

[44] *United Rentals, Inc. v. RAM Hldgs., Inc.*, 937 A.2d 810, 830 (Del. Ch. Dec. 21, 2007) (emphasis in original).

triable issue of fact. Other triable issues remain on the ER&D Claims, including: which ER&D expenses relate to the Diesel Engine and which relate to other engine projects;[45] how much of the ER&D was incurred in Franklin, Ohio; and whether "manufacturing" includes ER&D.

17. For these reasons, Renco's Motion for summary judgment as to Counts I and VIII with respect to the ER&D Claims is **DENIED**.

### D. The Ilshar—Breach of Contract Claims

18. Holdco alleges that ILR breached the Ilshar Agreement by making certain investments and loans and failing to perform certain administrative duties. Holdco has not prayed for damages; instead, it seeks an order removing ILR as Ilshar's managing member. The parties agree that the Ilshar Agreement does not provide a mechanism for removal.[46] In support of its request for removal, Holdco points to Section 15.14 of the Ilshar Agreement, which entitles the parties to seek "specific performance in addition to any other appropriate relief or remedy . . . or such other relief as such court may deem just and proper in order to enforce this Agreement . . . ."[47] Holdco maintains that the contract's recognition of the parties'

---

[45] During oral argument, the parties seemed to agree that a stipulated order on the question of the inclusion of ER&D expenses related to non-diesel engines would be appropriate. Oral Arg. on Summ. J. Tr. 119−120. The parties have yet to file this stipulation.

[46] The Agreement designates ILR as Ilshar's managing member "until such time . . . as ILR elects to resign . . ." Shindel Ilshar Aff., Ex. B at 20.

[47] *Id*. at 41.

right to seek specific performance and "other appropriate relief" is tantamount to a recognition that it may seek to remove ILR as managing member. For its part, Renco argues that removal would amount to extreme equitable relief not permitted by the contract or by Delaware law.

19. The Court dismissed Holdco's fiduciary duty claims because the harms alleged arose from underlying contractual breaches.[48] This is now law of the case.[49] If Holdco had sustained viable breach of fiduciary claims for trial, the Court could perhaps entertain the remedy of removal in the spirit of equity. But the remedy for breach of contract is damages (and there are none pled here), injunctive relief or specific performance (neither of which are sought). Holdco asks the Court to supplant Renco's contractual authority to manage Ilshar without a legal basis to import that right into the contract. Accordingly, Renco's Motion as to Count III of the HSAC must be **GRANTED**.

## CONCLUSION

Summary judgment on Counts I and VIII of the RSAC is **DENIED**. Summary judgment on Count II of the RSAC and Count III of the HSAC is **GRANTED**.

**IT IS SO ORDERED.**

_/s/ Joseph R. Slights III_
Vice Chancellor

---

[48] *AM Gen. Hldgs. LLC*, 2013 WL 5863010, at *9–12.

[49] *See May*, 838 A.2d at 288 n.8. *See also AM Gen. Hldgs. LLC*, 2016 WL 4440476, at *16.