# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHAWN EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0454-LWW |
| | ) | |
| AVANDE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: March 11, 2022
Date Decided: June 9, 2022

Sean J. Bellew, BELLEW LLC, Wilmington, Delaware; Jenny Li, BAILEY & GLASSER, LLP, Wilmington, Delaware; *Counsel for Plaintiff Shawn Evans*

Thad J. Bracegirdle, BAYARD, P.A., Wilmington, Delaware; Jerome R. Bowen, BOWEN LAW OFFICES, Las Vegas, Nevada; *Counsel for Defendant Avande, Inc.*

**WILL, Vice Chancellor**

This decision is the latest chapter in an advancement-turned-indemnification action filed in 2018. The court previously held at the summary judgment stage that Shawn Evans, the former CEO of Avande, Inc., could not demonstrate his entitlement to partial indemnification as a matter of law in connection with claims Avande asserted against him. Those underlying claims were for tortious interference and defamation (on which Evans technically prevailed) and for breach of fiduciary duty (on which he was found liable). Because Avande did not cross-move for summary judgment on Evans's entitlement to partial indemnification, this matter proceeded to a trial on a stipulated paper record.

Two primary questions are before the court. One, whether the tortious interference and defamation claims were brought by reason of Evans's former corporate capacity. And two, whether Evans partially succeeded on the fiduciary duty claim.

On the first issue, Avande has met its burden of showing that there is no causal link between Evans's status as a former officer of Avande and the tortious inference and defamation claims. The record in the underlying action indicates that those claims solely concerned Evans's post-termination conduct. Despite Evans's assertion that his use of Avande's confidential information was necessary for his alleged conduct, Avande did not make such an allegation in the plenary action.

On the second issue, Avande has demonstrated that Evans did not succeed but was found liable. Undeterred by his failure to persuade the court at the summary judgment stage, Evans once again advances a novel theory of proportional indemnification under which Avande would be obligated to indemnify him. That argument is no more convincing now than it was before. It also contravenes the claim-by-claim approach to indemnification consistently followed by Delaware courts.

Accordingly, judgment is entered in favor of Avande.

## I.     RELEVANT BACKGROUND

Unless otherwise noted, the facts described in this section were proven by a preponderance of the evidence. To the extent that any conflicting evidence was presented, I have weighed it and made findings of fact accordingly.[1]

### A.     The Plenary Action

Defendant Avande, Inc. is a privately held Delaware corporation that provides medical claims management services to insurance companies and healthcare organizations.[2] Plaintiff Shawn Evans served as the Chief Executive Officer of

---

[1] Facts drawn from the Declaration of Thad J. Bracegirdle (Dkt. 71) submitted in conjunction with Defendant's Pre-Trial Opening Brief (Dkt. 70) are referred to according to the numbers provided on the declaration's exhibit list (cited as "DX __"). Both parties cited to those exhibits in their pre-trial briefs.

[2] DX 12 ¶¶ 1-2.

Avande from February 23, 2016 until his termination on February 15, 2018.[3] Evans also served as a director of Avande over that same period.[4] Following Evans's termination, Avande performed an audit through which it discovered various suspect transactions undertaken by Evans while he was serving as CEO.[5]

Avande filed litigation against Evans in this court on March 22, 2018 (the "Plenary Action"). Avande asserted claims for: (1) breach of fiduciary duty based on alleged self-dealing transactions and improper expenditures; (2) tortious interference, defamation, and conversion based on acts that Evans allegedly committed after his termination; and (3) a declaratory judgment that Evans had been removed from his position as CEO.[6] Trial was held in February 2019, at which Avande sought over $5.3 million in damages.[7]

Chancellor Bouchard issued a post-trial Memorandum Opinion on August 13, 2019. The court found that Evans breached his fiduciary duty of loyalty in connection with certain of the transactions Avande challenged at trial.[8] For example, the court found that Evans acted in bad faith by authorizing Avande to make

---

[3] *Id.* ¶ 8.

[4] *Id.*

[5] DX 16 at 5-6.

[6] DX 9 ¶¶ 18-38.

[7] DX 16 at 1.

[8] *Id.* at 8-19.

3

payments that he knew violated the law.[9] The court also found that Evans committed self-dealing by causing Avande to enter into business relationships with companies in which he held an ownership interest, such as a payment of more than $200,000 to DC Risk Solutions, Inc., a company wholly owned by Evans.[10] As to the other challenged transactions, the court found that Avande had not proven that they involved a conflict of interest, were made in bad faith, or constituted waste.[11] The court also held that Avande had abandoned its claims for declaratory relief, tortious interference, defamation, and conversion.[12]

On September 4, 2019, the court entered a Judgment Order implementing the August 13, 2019 Memorandum Opinion.[13] The Judgment Order stated that, with regard to the breach of fiduciary duty claim, "[j]udgment [wa]s entered in favor of Avande, and against Evans" for certain transactions but that "judgment [wa]s . . . entered in Evans's favor and against Avande" for others.[14] The Judgment Order also stated that "judgment [wa]s entered in favor of [Evans], and against Avande," for the declaratory relief, tortious interference, defamation, and conversion claims.[15]

---

[9] *Id.* at 15-16.

[10] *Id.* at 16-19.

[11] *Id.* at 10-19.

[12] *Id.* at 7.

[13] DX 17.

[14] *Id.* at 2-3.

[15] *Id.* at 4.

Evans was found liable for $21,817.70 in damages, plus pre- and post-judgment interest, and Avande was granted an equitable accounting to determine the entire fairness of payments to DC Risk and quantify additional damages.[16] Based on the results of that accounting, the court subsequently awarded Avande additional damages (jointly and severally against Evans and DC Risk) of $43,687.77, plus pre- and post-judgment interest.[17]

## B. This Advancement and Indemnification Action

On June 12, 2018, Evans sent a letter to Avande demanding advancement for expenses incurred in connection with the Plenary Action. He sent a separate letter eight days later detailing those expenses.[18] The parties were unable to agree on whether Evans was entitled to advancement.[19] Evans commenced this action on June 25, 2018.[20]

On September 28, 2018, the parties agreed to stay the advancement proceeding pending the final disposition of the Plenary Action, which Avande appealed.[21] The stay was lifted on November 12, 2020 after Avande voluntarily

---

[16] DX 16 at 19-20.

[17] DX 19 ¶¶ 18.

[18] Verified Compl. for Advancement Exs. E, G (Dkt. 1).

[19] *See* Verified Compl. for Advancement Ex. F.

[20] Dkt. 1.

[21] Dkt. 21.

dismissed its appeal.[22]  On November 17, 2020, Evans filed an amended complaint seeking indemnification under 8 *Del. C.* § 145, Avande's bylaws, and Avande's certificate of incorporation for fees incurred in connection with the Plenary Action and an award of fees-on-fees.[23]

On December 31, 2020, Avande filed a motion for judgment on the pleadings, arguing that Evans's claim for indemnification was not ripe because he had not complied with a notice requirement in Avande's bylaws.[24]  On January 5, 2021, Evans filed a motion of summary judgment, contending that he was entitled to indemnification for all expenses he had incurred in the Plenary Action except for the portion of the breach of fiduciary duty count on which he was held liable.[25]  After argument, I denied Avande's motion for judgment on the pleadings and took the summary judgment motion under advisement.[26]

On September 23, 2021, I issued a Memorandum Opinion granting in part and denying in part Evans's motion for summary judgment.[27]  In that decision, I held that Evans was entitled to indemnification for the expenses incurred in the Plenary

---

[22] Dkt. 28.

[23] Verified Amended Compl. for Indemnification ¶¶ 36-52 (Dkt. 29).

[24] *See* Dkts. 31-32.

[25] *See* Dkts. 33-34.

[26] For additional details, see the transcript of the court's June 25, 2021 oral ruling.  Oral Arg. Tr. 75-86 June 25, 2021 (Dkt. 51).

[27] Dkt. 54.

Action for the declaratory judgment and conversion claims. But could not reach that conclusion as a matter of law with regard to the fiduciary duty, tortious interference, or defamation claims.[28] My decision indicated that, had Avande cross-moved for summary judgment, I might have found in its favor on those issues.[29] Because questions of Evans's entitlement remained unresolved, the matter proceeded to trial.

After pre-trial briefing, a trial on a stipulated paper record regarding the remaining entitlement issues was held on March 11, 2022.[30]

## II. LEGAL ANALYSIS

Evans seeks indemnification for all fees and expenses he incurred in defending the tortious inference and defamation claims in the Plenary Action. He also seeks indemnification for a portion of the expenses incurred in defending the breach of fiduciary duty claim.

The parties agree that Avande bears the burden of proving that Evans is not entitled to indemnification.[31] "The burden of proof in civil cases in Delaware is

---

[28] *Evans v. Avande, Inc.*, 2021 WL 4344020, at *3 (Del. Ch. Sept. 23, 2021).

[29] *Id.* at *9 n.86.

[30] *See* Dkts. 63, 70, 73-74, 77.

[31] Dkt. 64 ¶ 3; *see Horne v. OptimisCorp*, 2017 WL 838814, at *3 (Del. Ch. Mar. 3, 2017) ("[U]nder 8 *Del. C.* § 145(c) . . . the ultimate burden of proof is on the defendant corporation to prove that the indemnitee is not entitled to indemnification."), *aff'd*, 177 A.3d 69 (TABLE) (Del. 2020).

7

typically one of preponderance of the evidence."[32] "Proof by a preponderance of the evidence means proof that something is more likely than not."[33]

Evans argues that he is entitled to mandatory indemnification under 8 *Del. C.* § 145(c). That section provides:

> To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.[34]

In determining whether an individual succeeded "on the merits or otherwise," "the Court's focus is narrowly upon the *outcome* of the underlying action."[35] In addition, the covered individual must have been made a party to the underlying proceeding "by reason of the fact that [she] is or was" an officer or director.[36] Avande's bylaws

---

[32] *In re Coverdale*, 1987 WL 758002, at *3 (Del. Ch. Aug. 3, 1987).

[33] *Revolution Retail Sys., LLC v. Sentinel Techs., Inc.*, 2015 WL 6611601, at *9 (Del. Ch. Oct. 30, 2015).

[34] 8 *Del. C.* § 145(c).

[35] *Horne*, 2017 WL 838814, at *3 (quoting 8 *Del. C.* §145(c)); *see Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *3 (Del. Ch. May 3, 2002) ("A party eligible for mandatory indemnification under § 145(c) must demonstrate . . . that the party was successful on the merits or otherwise." (quoting *Cochran v. Stifel Fin. Corp.*, 2000 WL 1847676, at *9 (Del. Ch. Dec. 13, 2000))); *see also Sun-Times Media Grp. v. Black*, 954 A.2d 380, 397 (Del. Ch. 2008) (explaining that one's "entitlement to indemnification . . . only becomes ripe once the underlying proceeding is truly final").

[36] 8 *Del. C.* § 145(b)-(c); *see Brown v. Rite Aid Corp.*, 2019 WL 2244738, at *4 n.40 (Del. Ch. May 24, 2019) ("Unlike Sections 145(a) and (b), Section 145(c) does not include the 'by reason of the fact that the person is or was a director, officer, employee or agent of the

and certificate of incorporation provide for indemnification "to the fullest extent permitted by [Delaware] law."[37]

The parties do not dispute that Evans succeeded on the tortious interference and defamation claims in the Plenary Action.[38] His entitlement to indemnification for those claims turns on whether Avande has proven that they were not brought against Evans by reason of the fact that he was an Avande director or officer.

The parties also do not dispute that Avande's breach of fiduciary duty claim was brought against Evans by reason of the fact of his corporate status.[39] Evans's entitlement to indemnification for that claim depends on whether Avande has proven that he was not successful.

For the reasons discussed below, I find that Avande has met its burden of proof on each issue.[40]

---

corporation' language. But it incorporates the language by extending mandatory indemnification to 'any action, suit or proceeding referred to in subsections (a) and (b) of this section.'").

[37] DX 1 § 9 ("Subject to any provisions in the bylaws . . . [Avande] shall indemnify, to the fullest extent permitted by [Delaware] law, any director or officer of the Company . . . ."); DX 10 §§ 5.2, 5.3 (tracking the statutory language of 8 *Del. C.* §§ 145(b) and 145(c), respectively); *see Evans*, 2021 WL 4344020, at *3-4 (describing the relevant provisions of Avande's bylaws and certificate of incorporation).

[38] *See* Def.'s Pre-Trial Opening Br. 20; Pl.'s Pre-Trial Answering Br. 15-16 (Dkt. 73).

[39] *See* Def.'s Pre-Trial Opening Br. 20; Pl.'s Pre-Trial Answering Br. 25.

[40] I therefore need not address Avande's argument that Evans's unclean hands are an independent basis to deny him the indemnification he seeks.

## A. The Tortious Interference and Defamation Claims

Evans asserts that Avande's tortious interference and defamation claims were brought by reason of the fact of his corporate role. That is so, he says, because those claims concerned his possession of confidential information—the identities of Avande's vendors and creditors—obtained while he was CEO of Avande.[41] Avande disagrees, contending that the claims addressed post-termination conduct with no link to Evans's role as an officer or director.

A claim is deemed to have been brought "by reason of the fact" that a party is or was an officer or director of a corporation if there is a "causal connection or nexus" between the underlying claim and the party's "corporate function or 'official [corporate] capacity.'"[42] That link is shown "if the corporate powers were used or necessary for the commission of the alleged misconduct."[43] The causal connection requirement may be satisfied where the claim concerns "allegations relating to post-separation use of [the corporation's] confidential information learned pre-separation."[44]

---

[41] Pl.'s Answering Br. 15-24.

[42] *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 213 (Del. 2005) (quoting *Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *4 (Del. Ch. May 3, 2002)).

[43] *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007) (explaining that the link must derive from conduct that occurred when the individual was an officer or director).

[44] *Ephrat v. MedCPU, Inc.*, 2019 WL 2613281, at *7 (Del. Ch. June 26, 2019); *see Carr v. Glob. Payments Inc.*, 2019 WL 6726214, at *6 (Del. Ch. Dec. 11, 2019) ("If the claim as pled relies on the misuse of confidential information learned while an officer or director, it

10

"Delaware courts typically determine whether there is a 'causal connection' by 'examining the pleadings in the underlying litigation.'"[45]  But this court has refrained, in advancement and indemnification proceedings, from inferring the use of confidential information.  It has, instead, looked to whether such use was specifically alleged in the pleadings in the plenary action.

In *Ephrat v. MedCPU, Inc.*, for example, two former officers of a corporation allegedly breached contracts by soliciting the corporation's customers and employees after the officers' employment had concluded.[46]  The court did not analyze whether the identities of customers and employees constituted company confidential information but, instead, reviewed the allegations contained in the underlying pleadings.  Because those pleadings stated only that the actions were taken after the defendants left the company and did not provide that they "use[d]

---

'pertains to' the party's former position, and that party is entitled to advancement under the standard applicable here."); *Brown v. LiveOps, Inc.*, 903 A.2d 324, 326 (Del. Ch. 2006) (finding the causal connection requirement satisfied where a former officer allegedly misappropriated corporate trade secrets obtained while serving as an officer).

[45] *Charney v. Am. Apparel, Inc.*, 2015 WL 5313769, at *16 (Del. Ch. Sept. 11, 2015) (quoting *Holley v. Nipro Diagnostics, Inc.*, 2014 WL 7336411, at *8 (Del. Ch. Dec. 23, 2014)); *see Marino v. Patriot Rail Co.*, 131 A.3d 325, 346 n.24 (Del. Ch. 2016) (collecting cases where Delaware courts have examined the pleadings in underlying proceedings in assessing the "by reason of the fact" requirement); *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, at *4 (Del. Ch. Jan. 30, 2004) ("The Court must seek to discern the nature of the claims which [the officer or director] is called upon to defend by reading the [complaint] as a whole and providing a reasonable interpretation of the substance of the allegations of each count.").

[46]  2019 WL 2613281, at *8 & nn.81-83.

confidential information . . . obtained by reason of the fact of their positions with [the company] in doing so," no "nexus or causal connection" was established between the claims and the defendants' officer roles.[47]

Similarly, in *Carr v. Global Payments Inc.*, a former officer of a corporation allegedly breached restrictive covenants by soliciting the corporation's employees.[48] The court initially granted an order advancing expenses for the breach of contract claim because the complaint in the plenary action alleged that the defendant's "misuse of [the corporation's] confidential information [was] intertwined with his unlawful . . . solicitation."[49] The complaint was subsequently amended to "remove[] allegations of the misuse of confidential information," and the company successfully moved to modify the advancement order.[50] The court then determined that the defendant was no longer entitled to advancement for the breach of contract claim because the company did not specifically allege "any post-termination misuse of confidential information . . . that he learned while Chairman and CEO."[51]

---

[47] *Id.* at *8.

[48] 2019 WL 6726214, at *2.

[49] *Id.* at *2, *7.

[50] *Id.* at *3.

[51] *Id.* at *9. Evans cites to several cases where the court found a causal connection between a claim and the post-separation use of confidential information sufficient to award advancement or indemnification. A review of the pleadings in those actions reveals that each contained specific allegations regarding a former corporate official's use of confidential information that directly related to the claim. In *Pontone v. Milso Industries Corporation*, the "gravamen" of the allegations concerned a "scheme" facilitated by

12

As in *Ephrat* and *Carr*, the pleadings in the Plenary Action are devoid of an allegation that Evans used Avande's confidential information in the commission of the purported acts giving rise to the claims at issue. Avande alleged that Evans committed tortious inference and defamation after his termination by making false statements to and attempting to cancel or prejudice Avande's relationships with its vendors, creditors, and other third-parties. Regarding tortious interference, the complaint stated:

> 27. In the time since Evans was validly terminated as Avande's CEO on February 15, 2018, he has taken (and continues to take) various acts with the intent and effect of canceling or prejudicing the Company's relationships and/or accounts with third parties such as vendors, service providers and lenders.
>
> 28. Through the acts alleged herein, Evans has intentionally interfered with Avande's contracts and/or valid business relationships with third parties. In so doing, Evans has wrongfully induced or caused the third parties

---

"confidential proprietary and trade secret information" and each claim in the underlying complaint alleged the use of confidential information. 100 A.3d 1023, 1051 (Del. Ch. 2014). In *Brown v. LiveOps, Inc.*, the plenary complaint alleged that a former officer gained access to the corporation's trade secrets and other confidential information and based each of the claims on the alleged misappropriation of that information. 903 A.2d at 330. In *Zaman v. Amedeo Holdings*, the complaint stated that former agents of a corporation breached their fiduciary duties and contractual obligations by disclosing the corporation's confidential information to a competitor. 2008 WL 2168397, at *30-31 (Del. Ch. May 23, 2008). And in *Ephrat*, the court found a link between claims against officers for misappropriation of confidential information and breach of contract for failure to return confidential information and allegations in the pleadings that the officers had taken and used company confidential information. 2019 WL 2613281, at *8-9.

to breach their contractual and/or business relationships with Avande.[52]

Regarding defamation, the complaint stated:

> 31. In the time since Evans was validly terminated as Avande's CEO on February 15, 2018, he has communicated with vendors and creditors of Avande and falsely stated that the Company is unable to pay its debts as they become due and payable. At the same time, Evans has solicited Avande's vendors and creditors to take legal action against the Company for the purpose of increasing the Company's expenses and driving it into bankruptcy. Evans has intentionally made false statements to Avande's vendors and creditors for the purpose of damaging the Company's relationships with these third parties and with the knowledge that the Company's solvency and ability to pay debts would be critical to them.[53]

The complaint did not, however, state that the identities of those third parties constituted confidential information. Nor did it allege that Evans gained possession of that information solely in his capacity as a director or officer of Avande.

The trial record from the Plenary Action further supports a finding that a causal link is lacking. Avande did not contend at trial or in its pre-trial briefing in the Plenary Action that the defamation or tortious inference claims implicated use

---

[52] DX 9 ¶¶ 27-28.

[53] *Id.* ¶ 31.

of confidential information.[54]   Evans also testified at that trial that he did not believe he was restricted from contacting Avande employees after his termination.[55]

Accordingly, neither the tortious interference nor defamation claim in the Plenary Action was brought "by reason of the fact" that Evans was an officer or director of Avande.  Evans is not entitled to mandatory indemnification for those claims.

## B.    The Fiduciary Duty Claim

Evans argues that he is entitled to proportional indemnification for the breach of fiduciary duty claim.   In particular, he contends that his entitlement to indemnification should reflect that he was found liable for approximately $85,000 of damages in connection with the aspects of the breach of fiduciary duty claim for which he was held liable—far less than the $5.3 million Avande sought at trial.[56] Evans also asserts that he saw partial success on the fiduciary duty claim because

---

[54] *See* DX 13 at 49; DX 14 at 86; DX 15 at 15, 51; Def.'s Pre-Trial Reply Br. Ex. A at 22-25 (Dkt. 74).

[55] *See* DX 13 at 11.

[56] In the September 4, 2019 Judgment Order, Evans was found to be liable for $21,817.70 in connection with certain self-dealing transactions, plus another $5,725.15 in pre-judgment interest.  DX 17 at 2.  The Judgment Order also ordered an equitable accounting with respect to all payments Avande made to DC Risk before Evans was terminated as CEO. *Id.*  After that accounting, Evans and DC Risk were found jointly and severally liable for an additional $43,687.77, plus another $14,087.81 in pre-judgment interest.  DX 20 at 1-2.

judgment was entered in his favor regarding certain of the challenged transactions.[57] Avande insists that no indemnification is warranted because the court ultimately found Evans liable for breaching his fiduciary duties to Avande.

As Avande points out, this court has already heard and rejected Evans's position. My summary judgment decision observed that "[t]he court [wa]s aware of no authority where 'partial success' was analyzed based on the percentage of damages a prevailing party recovered against an indemnitee."[58] It also outlined the practical problems that would arise if an overly granular approach was taken to partial indemnification.[59] Most critically, it explained that "on the 'claim, issue or matter' of whether Evans breached his duty of loyalty, he did not prevail."[60]

---

[57] Pl.'s Answering Br. 26-27.

[58] *Evans*, 2021 WL 4344020, at *6.

[59] *Id.* at *6 n.58.

[60] *Id.* at *6. Professor Folk's seminal report on the 1967 amendments to the Delaware General Corporation Law addressed the question of whether an officer or director could be indemnified if she was held partially liable in an action against her. Ernest Folk, *Folk Report* 88, https://delawarelaw.widener.edu/files/resources/folkreport.pdf (quoting *Essential Enters. Corp. v. Dorsey Corp.*, 182 A.2d 647, 655 (Del. Ch. 1962)). He discussed the phrase "any claim, issue, or matter" as intended to solve the need, raised by then-Chancellor Seitz, to clarify "whether the statute permits an allocation of expenses when directors have been adjudged liable as to some but not all of the *claims* asserted against them." *Id.* (emphasis added). Professor Folk emphasized that the Court of Chancery should be empowered to "allocate indemnifiable expenses and items when a director is adjudged liable as to some but not all *claims* to the extent that the court deems fair and equitable." *Id.* (emphasis added). In other words, the focus of Section 145(c) was on claims, rather than sub-issues.

16

Evans chose to continue to press this argument at trial despite these decisions and the court's strong signaling that, had Avande cross-moved for summary judgment, he would have been found to lack entitlement to partial indemnification for the breach of fiduciary duty claim as a matter of law. Notwithstanding his efforts at repackaging it, Evans's theory of proportional indemnification is no more persuasive now than it was earlier in this case. As an initial matter, "issues already decided by the same court should be adopted without relitigation."[61] In any event, Evans did not raise any new evidence or precedent supporting his theory that the ratio between damages sought and awarded is the basis by which one's success in an underlying proceeding should be measured.

Moreover, Delaware courts evaluate whether a party was successful "on the merits or otherwise" under Section 145(c) on a claim-by-claim basis.[62] That is,

---

[61] *Del. Dep't of Nat. Res. & Envtl. Control v. Food & Water Watch*, 246 A.3d 1134, 1138 (Del. 2021) (quoting *May v. Bigmar, Inc.*, 838 A.2d 285, 288 n.8 (Del. Ch. 2003)); *see Carlyle Inv. Mgmt. L.C.C. v. Moonmouth Co.*, 2015 WL 5278913, at *7 (Del. Ch. Sept. 10, 2015) (holding that the law of the case doctrine "applies to decisions rendered by a court that arise again later in the same court, in the same proceeding—*i.e.*, a ruling at the summary judgment stage that also applies at the post-trial stage").

[62] *See Rite Aid Corp.*, 2019 WL 2244738, at *8 ("Whether a party seeking indemnification was successful is determined claim by claim."); *Paolino v. Mace Sec. Intern., Inc.*, 2009 WL 4652894, at *8 (Del. Ch. Dec. 8, 2009) (describing "Delaware's overarching approach to Section 145, in which claims are evaluated individually or in appropriate groupings [of claims]"); *Zaman*, 2008 WL 2168397, at *25-33 (conducting claim-by-claim analysis); *MCI Telecomm. Corp. v. Wanzer*, 1990 WL 91100, at *11 (Del. Super. June 19, 1990) (holding that a director who was found liable on one of the four counts brought against him was entitled to mandatory indemnification for the three counts on which he was not found liable); *Evans*, 2021 WL 4344020, at *5 (explaining that Delaware courts have generally

17

partial indemnification is granted in instances success on some—but not all—claims.[63] When determining whether a party was successful in defending against a claim, "this court looks strictly at the outcome of [the claim in] the underlying action."[64] It is unnecessary for the court to "further inquir[e] into the 'how' and 'why' of the result" because "the only relevant consideration is 'what the result was, not why it was.'"[65]

Consistent with that approach, I assess whether Evans succeeded "on the merits or otherwise" in defending the breach of fiduciary duty claim in the Plenary Action. The record in that action plainly demonstrates that he did not. Rather, Evans was found liable for breaching his duty of loyalty to Avande. He is therefore not entitled to partial indemnification in connection with his defense of that claim.

## III. CONCLUSION

For the foregoing reasons, Avande has proven by a preponderance of the evidence that Evans is not entitled to mandatory indemnification for expenses incurred in his defense of the tortious interference, defamation, or breach of fiduciary duty claims in the Plenary Action. The parties are directed to submit a final order

---

made the determination of whether one succeeded on the merits or otherwise "claim by claim").

[63] *See MCI*, 1990 WL 91100, at \*9; *May*, 838 A.2d at 288 (explaining that a claimant "should only be indemnified in an amount that reflects her limited success").

[64] *Hermelin v. K-V Pharm. Co.*, 54 A.3d 1093, 1107 (Del. Ch. 2012).

[65] *Id.* (quoting *Waltuch v. Conticommodity Servs., Inc.*, 88 F.3d 87, 96 (2d Cir. 1996)).

within ten days of this decision. The plaintiff is further directed to file a Rule 88 affidavit consistent with this court's November 22, 2021 case scheduling order.